**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CORNELL STOREFRONT SYSTEMS, INC.,** | : | No. 3:23cv555 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| **v.** | : | |
| | : | |
| **MOBILFLEX INC.,** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Plaintiff Cornell Storefront Systems, Inc. ("Cornell") asserts claims in this trade secrets matter against Defendant MobilFlex, Inc. ("MobilFlex"). Cornell alleges that MobilFlex is liable for tortious interference with contracts, tortious interference with business relationships, conversion, and unjust enrichment. Cornell also alleges that MobilFlex is liable for trade secret misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* ("DTSA") and the Pennsylvania Uniform Trade Secrets Act, 12 PA. CONS. STAT. § 5301, *et seq* ("PUTSA").

Before the court is MobilFlex's motion to dismiss Cornell's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. Alternatively, MobilFlex moves for judgment on the pleadings under Rule 12(c). The parties have briefed their respective positions and this matter is ripe for a decision.

**Background**

This case arises from causes of action that are closely intertwined with those previously adjudicated in state court.  The primary issue at this stage is whether the present cause of action in federal court is barred by that prior adjudication.  By way of a brief background, Cornell is a manufacturer and seller of security and life safety closure products, including rolling steel doors, security grilles, fire-related products, and insulated doors. (Doc. 1, Compl. ¶ 16).[1]  Cornell provides products and services to customers throughout the United States of America. (Id. ¶ 17).  As alleged, Cornell's business relies heavily on repeat business from existing customers. (Id. ¶ 18).

Project managers and project coordinators play a critical role in Cornell's success. (Id. ¶ 19).  Beyond marketing and selling Cornell's products and services, they are responsible for developing and maintaining relationships with current, past, and prospective customers. (Id. ¶ 20).  Cornell's success also depends on its trade secrets, which include unique business practices, customer information, along with pricing and margin information for customers' projects. (Id. ¶¶ 21-22).  These trade secrets are confidential and not publicly available.

---

[1] These background facts are derived from plaintiff's complaint.  At this stage of the proceedings, the court must accept all factual allegations as true.  <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted).  The court makes no determination, however, as to the ultimate veracity of these assertions.

(Id.)  Because project managers and project coordinators have access to this information, Cornell has implemented internal policies and procedures to safeguard the confidentiality of its trade secrets. (Id. ¶¶ 23-25).  For example, employees with access to such information must execute employment and non-disclosure agreements containing restrictions such as non-compete, non-solicitation, and confidentiality provisions. (Id.)

Beginning sometime around May 5, 2019, Cornell employed Nina Ancharski as a project coordinator.  (Id. ¶¶ 26, 27).  Ancharski's responsibilities included, among others, developing and maintaining relationships with Cornell's current, past, and prospective customers across the country. (Id. ¶ 28).  Given the nature of her job, Ancharski had access to Cornell's trade secrets and confidential information. (Id. ¶ 32).  As a condition of her employment, Cornell required Ancharski to sign both an employment agreement ("Employment Agreement") and a non-disclosure agreement ("Non-Disclosure Agreement"), which she did. (Id. ¶ 33; Doc 1-1, Exs. 1, 2 at ECF pp. 2-11).

Ancharski's employment with Cornell ended around September 11, 2020. (Id. ¶ 38).  Upon her departure, Ancharski allegedly engaged in several violations of her Employment and Non-Disclosure Agreements. (Id. ¶ 39).  Those violations included accepting employment with plaintiff's direct competitors and engaging in direct competition with plaintiff. (Id.)  As alleged, Ancharski worked for plaintiff's

direct competitor, Advance Door Technologies, for almost four (4) months in a position substantially similar to her position with plaintiff. (Id. ¶ 40). Then, in and around March 2021, Ancharski accepted a position with MobilFlex, another direct competitor of Cornell. (Id. ¶ 41).

Upon learning that MobilFlex hired Ancharski for a position involving duties and responsibilities similar to those she performed at Cornell, plaintiff sent Ancharski a demand letter directing her to take all necessary steps to comply with the Employment Agreement—including its non-solicitation, non-competition, and confidentiality provisions—and to confirm her compliance in writing. (Doc. 1-1, Ex. 3, ECF at pp. 13-14). Cornell likewise sent MobilFlex a letter demanding that it refrain from interfering with Ancharski's obligations to Cornell under the Employment Agreement and to confirm its compliance in writing. (Doc. 1-1, Ex. 4, ECF. pp. 23-24).

Nevertheless, Ancharski allegedly continued to violate the Employment and Non-Disclosure Agreements. (Id. ¶ 49). Cornell contends that MobilFlex not only continued to employ Ancharski in a competitive capacity, but also encouraged her to violate her covenants with plaintiff. (Id. ¶ 50). As a result, on August 20, 2021, Cornell sued Ancharski in the Court of Common Pleas of Luzerne County, Pennsylvania ("Ancharski Litigation"). (Id. ¶ 51). The Ancharski Litigation was

premised on claims for breach of contract, tortious interference, and misappropriation of trade secrets. (Id.)

According to Cornell, Ancharski and MobilFlex avoided responding to plaintiff's discovery requests throughout the Ancharski Litigation. (Id. ¶¶ 52, 53). Cornell asserts that Ancharski and MobilFlex frustrated its efforts to uncover the nature and extent of the misconduct under the Employment Agreement. (Id. ¶¶ 52, 58).  Although MobilFlex was not a party to the Ancharski Litigation, Cornell served "non-party discovery" requests on it to obtain critical information concerning Ancharski's employment at MobilFlex. (Id. ¶ 56).  MobilFlex allegedly failed to respond to plaintiff's discovery requests nor did it produce any requested documents. (Id. ¶ 56).  For her part, Ancharski repeatedly refused to produce documentation related to her employment with Advanced Door Technologies and MobilFlex. (Id. ¶ 53).  Cornell then moved to compel Ancharski to provide full and complete responses to its discovery requests, which was granted. (Id. ¶ 54). However, Ancharski disregarded the court's order. (Id. ¶ 55).  As a result, the court imposed sanctions against Ancharski. (Id. ¶ 55).

Then, in March 2023, Cornell and Ancharski resolved the Ancharski Litigation, resulting in the entry of an Agreed Permanent Injunction and Agreed Order of Dismissal ("Agreed Order of Dismissal") prohibiting Ancharski from further violating the Employment Agreement. (Id. ¶ 59).

Cornell now alleges that discovery in the Ancharski Litigation revealed that MobilFlex had requested certain financial information from Ancharski prior to her employment there. (Id. ¶ 60).[2]  According to Cornell, Ancharski disclosed to MobilFlex confidential information related directly to plaintiff's profit margins, pricing, and costs for projects on which Ancharski had worked. (Id.) Furthermore, it is alleged that Ancharski improperly disclosed to MobilFlex the identity of one of Cornell's customers and subsequently induced that customer to transfer its business to MobilFlex. (Id. ¶ 62).

Further, Cornell alleges that it recently discovered that Ancharski assisted MobilFlex in successfully soliciting three of plaintiff's customers. (Id. ¶ 63). Cornell also contends that Ancharski interfered with, and solicited business from several of its referral sources. (Id. ¶ 64).  As a result, plaintiff claims that the loss of these customers alone caused more than $600,000 in damages to the company. (Id. ¶ 65).

Based upon the above allegations, Cornell's complaint sets forth several causes of action against MobilFlex.  Counts I and II advance claims for tortious interference with the Employment Agreement and Non-Disclosure Agreement

---

[2] Cornell allegedly obtained an email between MobilFlex and Ancharski through discovery in the Ancharski Litigation. (Doc. 1, Compl. ¶ 60).  This email contained several attachments entitled "(i) 'Plan Comparison:Cost.pdf'; (ii) View Plain Details_Pennie.pdf; and (iii) Sales Examples.pdf.[ ] " (Id. ¶ 61). Per Cornell, Ancharski produced the email exchange but never produced the attachments. (Id.)

that Cornell executed with Ancharski. Count III alleges that MobilFlex tortiously interfered with Cornell's business relationships with its customers. Counts IV and V assert claims for misappropriation of trade secrets under the DTSA and PUTSA respectively. Count VI alleges conversion of plaintiff's property and Count VII sets forth a claim for unjust enrichment.

MobilFlex filed an answer to the complaint. (Doc. 21). Subsequently, it moved to dismiss Cornell's claims as barred by the doctrine of claim preclusion, also referred to as *res judicata*. (Doc. 34). To that end, MobilFlex seeks dismissal of Cornell's complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction, or in the alternative, MobilFlex moves for judgment on the pleadings pursuant to Rule 12(c).

**Jurisdiction**

Because Cornell asserts claims pursuant to the DTSA, the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

The court also has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Cornell is a Delaware corporation with its headquarters and principal place of business in Pennsylvania. (Doc 1, Compl. ¶ 10). MobilFlex is a citizen of Canada and maintains its worldwide headquarters in Quebec. (Id. ¶ 11).

However, MobilFlex conducts business in the United States of America and maintains its American based headquarters in the State of New York. (Id. ¶ 12). Additionally, the amount in controversy exceeds $75,000.  Because complete diversity of citizenship exists among the parties and the amount in controversy exceeds $75,000, the court has jurisdiction over this case. See 28 U.S.C. § 1332 ("district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states[.]").  As a federal court sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Analysis**

### 1. The Applicable Standard of Review for *Res Judicata*

The parties dispute the proper standard of review applicable to MobilFlex's motion. Although MobilFlex asserted *res judicata* as an affirmative defense in its answer, it now seeks dismissal of the complaint on that same basis. (Docs. 21, 34).  MobilFlex styled its motion as one to dismiss or, in the alternative, for judgment on the pleadings pursuant to Rule 12(b)(1) and Rule 12(c), respectively. (Doc. 34).  MobilFlex maintains that the motion conducts a facial attack on the complaint, challenging only its sufficiency. (Doc. 34-1, Def. Br. in

Supp. at 6).  Per MobilFlex, such a facial attack requires the court to accept the allegations of the complaint as true under the same standard for a Rule 12(b)(6) motion. (Id.)  Cornell counters that a 12(b)(1) motion is not the appropriate vehicle because *res judicata* is an affirmative defense, not a jurisdictional bar to the court's subject-matter jurisdiction. (Doc. 37, Br. in Opp. at 4). Cornell's argument is persuasive.

First, "[a] Rule 12(b) motion to dismiss a complaint must be filed before any responsive pleading." Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991). Second, *res judicata* is specifically identified "as an affirmative defense pursuant to [Rule] 8(c)." Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997).  It is not a doctrine that defeats subject-matter jurisdiction. Id. (citing Livera v. First Nat'l State Bank of New Jersey, 879 F.2d 1186, 1190 (3d Cir.1989).  Here, MobilFlex filed its motion after it had already filed an answer, which contravenes the procedural requirements for filing a Rule 12(b) motion. Additionally, dismissal on *res judicata* grounds cannot be obtained under Rule 12(b)(1). Id. The court therefore declines to apply the Rule 12(b)(1) standard and instead treats MobilFlex's motion as a Rule 12(c) motion.

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(c).  Because

MobilFlex filed its motion after submitting an answer, it is appropriate to treat the motion as one under Rule 12(c). Turbe, 938 F.2d at 428.

A Rule 12(c) motion is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6). Id. Before addressing the standard governing a Rule 12(b)(6) motion, the court must first determine whether application of that standard is proper in this case.

As the Third Circuit Court of Appeals has stated, "an affirmative defense will serve as grounds for a Rule 12(b)(6) dismissal *only* if the basis for the defense is evident on the face of the complaint." Brody v. Hankin, 145 F. App'x 768, 771 (3d Cir. 2005). In other words, if a *res judicata* bar "is not apparent on the face of the complaint, then it may not afford the basis for dismissal of the complaint under Rule 12(b)(6)." Id. at 771-72 (quoting Rycoline, 109 F.3d at 886)).

When the basis for a *res judicata* defense is not apparent on the face of the complaint, the court cannot rely on facts and documents from prior proceedings that were not mentioned in, or attached to, the complaint. Brody, 145 F. App'x at 772. In such circumstances, a district court could pursue either of the following procedures: 1) deny the motion without prejudice to renew it in the form of a motion for summary judgment pursuant to Rule 56; or 2) convert the Rule 12(b)(6) motion into a Rule 56 motion and afford "all parties ... reasonable

opportunity to present all material made pertinent to such a motion by Rule 56."
Rycoline Prods., 109 F.3d at 886–87.

Cornell asserts that MobilFlex's motion should be denied for two reasons. Cornell contends that a Rule 12 motion would not be the proper vehicle here because the asserted *res judicata* bar is not apparent on the face of the complaint. (Doc. 37, Br. in Opp. at 5). Cornell also avers that if MobilFlex's motion were converted into one under Rule 56, plaintiff would not have a reasonable opportunity to present all material pertinent under that rule. (Id. at 6). Although the court agrees with Cornell on this point, conversion to a Rule 56 motion is unnecessary at this stage because the basis for a *res judicata* defense is evident on the face of the complaint.

It is evident that the Ancharski Litigation is central to this cause of action. Cornell expressly alleges in the complaint that it learned of some of MobilFlex's alleged misconduct through discovery in the Ancharski Litigation. (Doc. 1, Compl. ¶ 7). The complaint also quotes provisions of the Employment Agreement and Non-Disclosure Agreement, which formed the basis of the Ancharski Litigation. (See id. ¶¶ 34-36). Therefore, Cornell not only referenced the Ancharski Litigation in the complaint, but also based this current litigation on it. (See id. ¶¶ 4-8, 51-59). Lastly, the complaint expressly states that "Cornell and Ancharski resolved the Ancharski Litigation, which included the entry of an agreed

injunction, enjoining Ancharski from further violations of her Employment Agreement." (Id. ¶ 59). Accordingly, the basis of a *res judicata* defense is evident on the face of Cornell's complaint and the court will apply the Rule 12(b)(6) standard to MobilFlex's motion.

When considering a Rule 12(b)(6) motion, the court tests the sufficiency of the complaint's allegations. To survive a motion to dismiss, "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " Doe v. Princeton Univ., 30 F.4th 335, 341–42 (3d Cir. 2022) (quoting FED. R. CIV. P. 8(a)(2)). That means, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

On a motion to dismiss for failure to state a claim, district courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief. See Phillips, 515 F.3d at 233 (citations omitted).

### 2. Claim Preclusion

MobilFlex asserts that the doctrine of *res judicata* applies in this case and bars Cornell's claims. (Doc. 34). According to MobilFlex, Cornell's current complaint arises from the same nucleus of operative facts as the complaint filed in the Ancharski Litigation. (Id.) Cornell disagrees. (Doc. 37, Br. in Opp. at 5-6).

The doctrine of *res judicata,* also referred to as claim preclusion, "prohibits reexamination not only of matters actually decided in the prior case, but also those that the parties might have, but did not assert in that action." Edmundson v. Borough of Kennett Square, 4 F.3d 186, 189 (3d Cir. 1993); In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008).

At issue here is the Agreed Order of Dismissal rendered by the Court of Common Pleas of Luzerne County. As a preliminary matter, the doctrine of claim preclusion only applies when a court of competent jurisdiction has entered a "final, valid judgment on the merits" in a prior proceeding. Balent v. City of Wilkes-Barre, 669 A.2d 309, 313 (Pa. 1995). Cornell does not dispute that the Agreed Order of Dismissal constitutes a voluntary dismissal and an adjudication on the merits in the Ancharski Litigation. (Doc. 37, Br. in Opp. at 11-12). The Agreed Order of Dismissal indicates in its opening paragraph that the Ancharski

Litigation had settled. (Doc. 34-2, Ex. C, Agreed Order of Dismissal ECF p. 40). The entry of "an order to settle, discontinue, and end a[n] [action] . . . ha[s] the same effect under the law as entry of a final judgment." Khalil v. Travelers Indem. Co. of Am., 273 A.3d 1211, 1226 (Pa. Super. Ct. 2022) (citing Kaiser v. 191 Presidential Corp., 454 A.2d 141, 143 (Pa. Super. Ct. 1982)). "All parties who sign such an order to settle, discontinue and end forever renounce their claims arising out of said action." Barson's & Overbrook, Inc. v. Arce Sales Corp., 324 A.2d 467, 468 (Pa. Super. Ct. 1974) (citing Baumgartner v. Whinney, 39 A.2d 738 (Pa. Super. Ct. 1944)). Additionally, the Agreed Order of Dismissal leaves no doubt as to its effect because it expressly provides that "[the Ancharski Litigation] is hereby dismissed with prejudice." (Doc. 34-2, Ex. C, Agreed Order of Dismissal ¶ I). "The dismissal of an action with prejudice indicates that . . . the dispute between the parties has been resolved and the court will not allow either party to commence a new action based on the same claim." Consolidation Coal Co. v. Dist. 5, United Mine Workers of Am., 485 A.2d 1118, 1123 (Pa. Super. Ct. 1984). Thus, the Ancharski Litigation may serve as a basis for claim preclusion.

A federal court's application of claim preclusion based on a prior state court judgment is governed by the "federal full faith and credit" statute which requires that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the

courts of such State ... from which they are taken." 28 U.S.C. § 1738; see

Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985) ("The

preclusive effect of a state court judgment in a subsequent federal lawsuit

generally is determined by the full faith and credit statute, which . . . directs a

federal court to refer to the preclusion law of the State in which judgment was

rendered."); see also Hartmann v. Time, Inc., 166 F.2d 127, 138 (3d Cir. 1947),

cert. denied, 334 U.S. 838 (1948) (recognizing the preclusive effect of two prior

judgments, including one rendered by a state court).  Thus, in determining

whether any judgments previously rendered in Pennsylvania state courts have a

preclusive effect in this action, the court must examine how Pennsylvania courts

would apply res judicata in this case. Turner v. Crawford Square Apartments III,

L.P., 449 F.3d 542, 548 (3d Cir. 2006) (applying Pennsylvania law to assess the

preclusive effect of a prior state court judgment); see also Lance v. Dennis, 546

U.S. 459, 466 (2006)).

Res judicata thus bars an action when four elements are present: "an

identity of issues, an identity of causes of action, identity of persons and parties

to the action, and identity of the quality or capacity of the parties suing or being

sued." In re Coatesville Area Sch. Dist., 244 A.3d 373, 379 (Pa. 2021).[3]  These

---

[3] The Third Circuit Court of Appeals has interpreted Pennsylvania claim preclusion law and
has held that "Pennsylvania courts require that the two actions share the following four

elements are also known as the "four identities." See, e.g., Estate of Tower, 343 A.2d 671, 674 (Pa. 1975). For ease of disposition, the court will address the third and fourth element together.

### a. Identity of Issues

As for the first element of claim preclusion— the identity of the thing sued upon or for—MobilFlex contends that both actions are premised on the same agreements, i.e., the Employment Agreement and Non-Disclosure Agreement. (Doc. 42, Def. Reply Br. at 7). Cornell disputes MobilFlex's contention and maintains that each action presents distinct issues. (Doc. 37, Br. in Opp. at 10-12). To support this position, Cornell identifies the differences between the claims asserted in each suit. (Id. at 10-11).

In deciding whether an identity of issues exists, courts examine whether the thing sued upon or for is the same between the two actions by "isolating the alleged wrongful act." Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir. 1988). Put differently, the first element refers to the "identity of subject matter" of both actions. Id. Thus, it is not dispositive that a plaintiff asserts a different theory of recovery or seeks different relief in the two actions. Tobias v. Halifax Twp., 28 A.3d 223, 227 (Pa. Commw. Ct. 2011).

---

conditions: (1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued." Turner, 449 F.3d at 548.

Here, Ancharski's breach of her Employment and Non-Disclosure Agreements through her employment with MobilFlex gave rise to both state and federal actions. Given that the same underlying occurrence resulted in both suits, the first element of claim preclusion is established. Gregory, 843 F.2d at 116.

### b. Identity of Causes of Action

Focusing on the second element of *res judicata*, that is, the identity of the causes of action, defendant argues that the complaint filed in the Ancharski Litigation is similar to Cornell's complaint in the instant action. (Doc. 34-1, Def. Br. in Supp. at 14). Cornell counters that MobilFlex's liability in this lawsuit is separate and distinct from Ancharski's liability in the Ancharski Litigation. (Doc. 37, Br. in Opp. at 14). The court agrees with Cornell.

"An identity of causes of action is found when the subject matter and the ultimate issues are the same in both proceedings." Cromartie v. Pennsylvania Bd. of Prob. & Parole, 680 A.2d 1191, 1196 (Pa. Commw. Ct. 1996) (citing Knox v. Pennsylvania Bd. of Prob.& Parole, 588 A.2d 79, 82 (Pa. Commw. Ct. 1991).

A party "cannot, by varying the form of action or adopting a different method of presenting his case, escape the operation of the principle that one and the same cause of action shall not be twice litigated." Kelly v. Kelly, 887 A.2d 788, 792 (Pa. Super. 2005). Thus:

> Identity of two causes of action may be determined by considering the similarity in the acts complained of and the

> demand for recovery as well as the identity of the
> witnesses, documents and facts alleged. In determining
> whether *res judicata* should apply, a court may consider
> whether the factual allegations of both actions are the
> same, whether the same evidence is necessary to prove
> each action and whether both actions seek compensation
> for the same damages.

Rose v. Hoffman Ins. Consultants, 241 A.3d 364 (Pa. Super. Ct. 2020).

On its face, the current litigation appears to involve the same causes of action as the Ancharski Litigation.  For instance, the complaint in the Ancharski Litigation asserts claims for breach of contract, inevitable disclosure of confidential information, violations of the PUTSA, breach of fiduciary duty and duty of loyalty, and tortious interference with Cornell's relationships with its customers.[4]  (Doc. 34-2, Ex. B, State Court Complaint ¶¶ 57-141). Similar claims are asserted in the current complaint against MobilFlex. (Doc. 1, Compl. ¶¶ 67-115).

Additionally, the Ancharski Litigation seems to involve similar acts and comparable demands for relief. It could also be reasonably argued that the witnesses and documents required for trial are largely the same in both actions.

---

[4] Some of Cornell's breach of contract claims in the Ancharski Litigation are based on the following provisions of the Employment Agreement: 1) non-compete; 2) non-solicitation of customers, 3) non-solicitation of employees; and 4) non-disclosure/confidentiality. (Doc. 34-2, Ex. B, State Court Complaint ¶¶ 57-66, 80-109). The remaining breach of contract claims are based on the violation of the Non-Disclosure Agreement by Ancharski. (Id. ¶¶ 110-119).

Nonetheless, a closer examination of both complaints reveals that the material facts alleged in each are not identical, nor are the theories of recovery. For example, in the present complaint, Cornell alleges that it "recently learned" through Ancharski that, while employed by MobilFlex, she assisted in diverting some of plaintiff's customers to defendant. (Id. ¶¶ 8, 63).  This allegation constitutes a material fact that could support Cornell's claims against MobilFlex, including, but not limited to, unjust enrichment, tortious interference with contracts, and conversion.

Moreover, Cornell alleges that it brings this action to recover for MobilFlex's ongoing possession, use, and disclosure of Cornell's documents and information purportedly provided by Ancharski. (Id. ¶ 66).  With respect to the alleged ongoing misconduct, "res judicata will not bar a subsequent action where the damages for which relief was sought in the earlier action were entirely different." Pontiere v. James Dinert, Inc., 627 A.2d 1204, 1210 (Pa. Super. Ct. 1993); Melat v. Melat, 602 A.2d 380, 383 (Pa. Super. Ct. 1992).  "Indeed, two suits [that] have arisen out of the same set of factual circumstances may involve entirely separate causes of action." Rearick v. Elderton State Bank, 97 A.3d 374, 380 (Pa. Super. Ct. 2014) (citation omitted). "When the cause of action in the first and second actions are distinct, or, even though related, are not so closely related that matters essential to recovery in the second action have been determined in the

first action, the doctrine of res judicata does not apply." <u>Chada v. Chada</u>, 756

A.2d 39, 44 (Pa. Super. Ct. 2000) (quoting <u>Hammel v. Hammel</u>, 636 A.2d 214,

218 (Pa. Super. Ct. 1994)).  Here, it appears that Cornell is asserting claims that

arose after the entry of the Agreed Order of Dismissal.  Those claims may have

not existed or could not have been sued upon in the Ancharski Litigation.

     Furthermore, both Ancharski and MobilFlex refused to comply with

Cornell's discovery requests in the Ancharski Litigation. (Doc.1, Compl. ¶¶ 5, 6).

They allegedly concealed their misconduct throughout the Ancharski Litigation by

skirting their discovery obligations. (<u>Id.</u> ¶¶ 6, 58).  According to Cornell, MobilFlex

did not provide a single document in response to plaintiff's non-party discovery

requests which sought crucial documents and information about Ancharski's

employment at MobilFlex. (<u>Id.</u> ¶¶ 6, 56).  Also as alleged, the state court imposed

sanctions against Ancharski for her failure to comply with the court ordered

discovery on a motion to compel. (<u>Id.</u> ¶ 55).  These alleged failures to comply

with Cornell's discovery requests frustrated plaintiff's ability to discover the extent

of Ancharski's actions taken on behalf of MobilFlex. (<u>Id.</u> ¶ 52).  For these

reasons, additional discovery could uncover misconduct committed by MobilFlex

which was not revealed during the Ancharski Litigation.  Consequently, the

causes of action in the Ancharski Litigation differ from those asserted here.

c. **Identity of Persons and Parties to the Action and Identity of the**
   **Quality or Capacity of the Parties Suing or Being Sued**

As for the third and fourth elements of *res judicata*, i.e., the identity of both the parties and the quality or capacity of the parties in both actions, MobilFlex asserts that it was in privity with Ancharski during the Ancharski Litigation. (Doc. 34-1, Def. Br. in Supp. at 13; Doc. 42, Def. Reply Br. at 6, 8-9).

"The doctrine of res judicata bars not only future suits between the same parties, but also future suits between the same parties and those in privity with them." Perelman v. Perelman, 545 F. App'x 142, 149 (3d Cir. 2013) (citing In re Iulo, 766 A.2d 335, 337 (Pa. 2001)). "Privity is broadly defined as 'mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right.' " Montella v. Berkheimer Assocs., 690 A.2d 802, 803 (Pa. Commw. Ct. 1997).

Under Pennsylvania law, the doctrine of *res judicata* applies "to different parties where one is vicariously responsible for the conduct of another, such as principal and agent or master and servant." Turner, 449 F.3d at 548 n.11 (3d Cir. 2006) (quoting Day v. Volkswagenwerk Aktiengesellschaft, 464 A.2d 1313, 1317 (Pa. Super. Ct. 1983) (citing Restatement (Second) of Judgments § 51 (1982))); see also Michelson v. Exxon Rsch. & Eng'g Co., 629 F. Supp. 418, 423 (W.D. Pa. 1986), aff'd, 808 F.2d 1005 (3d Cir. 1987) (holding that under Pennsylvania

law, any judgment involving an employee for acts committed within the scope of their employment "would apply with the same effect to the employer, and vice versa.").

Plaintiff pleads in the complaint that Ancharski was employed by MobilFlex. (Doc. 1, Compl. ¶¶ 7, 8, 41, 46, 47, 50). Further, the Agreed Order of Dismissal refers to Ancharski's employment by MobilFlex and states that "Ancharski shall terminate her employment with MobilFlex." (Doc. 34-2, Ex. C, Agreed Order of Dismissal, ¶ (D)).[5] Based on the allegations that Ancharski was MobilFlex's employee, Ancharski had a close and significant relationship with MobilFlex such that the two were in privity during the Ancharski Litigation.

With respect to the quality and capacity of the parties, "[i]t is questionable that this remains a viable prong under Pennsylvania law." Wilkins v. Rozum, 2008 WL 3833418, at *6 (W.D. Pa. Aug. 14, 2008). In Mintz v. Carlton House Partners, Ltd., for example, the Superior Court of Pennsylvania assumed that the fourth element was lacking yet still concluded that *res judicata* barred the subsequent action. 595 A.2d 1240, 1247 (Pa. Super. Ct. 1991). The court

---

[5] In its opposition to MobilFlex's motion, Cornell contends that defendant was not in privity with Ancharski. (Doc. 37, Br. in Opp. at 13-14). Specifically, Cornell asserts that Ancharski was an independent contractor and not an employee of MobilFlex. (Id. at 14). The contentions set forth in Cornell's brief in opposition directly contradict its allegations in the complaint. "[A] complaint may not be amended by the briefs in opposition to a motion to dismiss." Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted). Hence, the court will not consider this argument.

reiterated that *res judicata* "should not be defeated by minor differences of form, parties, or allegations, when these are contrived only to obscure the real purpose, a second trial on the same cause between the same parties." Id. (quoting Stevenson v. Silverman, 208 A.2d 786, 788 (Pa. 1965). The court added that "[t]he thing which the court will consider is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties actually had an opportunity to appear and assert their rights." Id. (quoting Stevenson, 208 A.2d at 788).

Here, Cornell's capacity as Ancharski's former employer is the same in both actions. Regarding the defendant, Cornell sues MobilFlex in its capacity as Ancharski's former employer. Although MobilFlex was not a party to the state court action, the fourth element of *res judicata* is nevertheless satisfied because MobilFlex and Ancharski were in privity during the Ancharski Litigation. See Dukes v. Wood, 2022 WL 446380, at *8 (W.D. Pa. Feb. 14, 2022), aff'd, 2023 WL 314300 (3d Cir. Jan. 19, 2023).

In sum, although the Ancharski Litigation and the present action share certain commonalities, their differences outweigh the similarities. Therefore, Cornell has not yet had its day in court against MobilFlex.[6] Defendant's motion

---

[6] The parties also dispute whether the Luzerne County Court of Common Pleas had personal jurisdiction over MobilFlex. Cornell raises this issue in its brief in opposition. Per Cornell, the Luzerne County Court of Common Pleas lacked personal jurisdiction over MobilFlex, and

will therefore be denied without prejudice, should MobilFlex elect to raise the *res judicata* defense after further discovery.[7]

**Conclusion**

For the reasons set forth above, defendant's motion to dismiss Cornell's complaint pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction will be denied. Defendant's motion for judgment on the pleadings pursuant to Rule 12(c) will also be denied. An appropriate order follows.

Date: 8/28/25

_____
**JUDGE JULIA K. MUNLEY**
**United States District Court**

---

therefore, the doctrine of *res judicata* does not apply to the current litigation. Given that the court concludes that this doctrine is inapplicable to this litigation, the court need not address this issue at this juncture.

[7] The court would have reached the same conclusion had it applied federal law on claim preclusion. Under federal law, the doctrine of *res judicata* is applicable when three elements are present: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." Davis v. Wells Fargo, 824 F.3d 333, 341 (3d Cir. 2016) (quoting Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991)).  These elements substantially parallel the *res judicata* elements set forth under Pennsylvania law and require a comparable analysis. "State law requirements for res judicata and privity are not inconsistent with the federal law applied by [the Court of Appeals for the Third Circuit]." See Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 310 (3d Cir. 2009).